UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Tim D. Wilson, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | Civil Action H-08-1652 |
| Hawker Beechcraft Services, *et al.*, | § § § | |
| Defendants. | § | |

## Findings of Fact and Conclusions of Law

*Facts.*

1. The airplane is a 1984 Beech Baron 58, serial TH-1407, FAA registration N58FW, a twin-engine propeller general aviation craft.
2. Wilson Air, LLC, is a Delaware limited liability company with its principal place of business in Houston, Texas.
3. Hawker Beechcraft Services, Inc., is a Kansas corporation with its principal place of business in Wichita, Kansas.
4. Hawker has facilities throughout the country, including Texas. Hawker worked on the airplane at its facility in Atlanta, Georgia. It is a FAA-certified repair station.
5. In the fall of 2006, Wilson asked Hawker to conduct an inspection before it bought the airplane. Hawker told Wilson that it would not conduct a purchase inspection, but it would do an annual inspection. Wilson and Hawker contracted for Hawker to perform an annual inspection of the airplane.
6. The airplane was delivered to Hawker in October 2006. Hawker employees – Bob Fullard and Ken Hofmann – inspected it. The annual inspection included the landing gear. During the inspection, the landing gear was found to be improperly configured. This was reported to Wilson, and it authorized Hawker to re-rig the landing gear.
7. The annual inspection was completed, and Wilson bought the airplane from El Jefe Aviation Services, Inc., on November 13, 2006. Hawker released the airplane to

       Wilson in early December 2006. On December 1, 2006, in connection with that release, Hawker represented that the airframe of the airplane had been to be airworthy with respect to its work. At the release, the airplane's total time was 3,554.6 hours, and the Hobbs meter reading was 1,514.1 hours.

8. At some later point, Wilson reported that the airplane had a fuel leak and had the leak repaired by someone other than Hawker. The airplane's maintenance log books do not record this repair work.

9. The nose-wheel of the airplane was damaged in February 2007. The nose-wheel of the nose gear was replaced about March 2, 2007.

10. On July 31, 2007, the airplane took off from Llano, Texas. Toby Gowins, a Wilson employee, was the pilot. Gowins heard an unusual notice when the landing gear retracted. He diverted the airplane to Brazoria County Airport near Angleton, Texas, and landed without incident. Gowins then taxied it to the hangar of Diversified Aviation Resources and reported the noise to mechanic, J.D. Rhodes.

11. Rhodes visually inspected the landing gear from below. He did not put the airplane on jacks or remove the landing gear access plate to inspect the nose-gear retract mechanism. Finding nothing wrong, Rhodes boarded the airplane with Gowins, and they departed for his original destination.

12. After the next takeoff, the nose-gear did not fully retract. Also, it did not fully extend. Gowins executed an emergency landing at Brazoria County Airport. At touchdown, the nose gear collapsed, damaging the airplane. The accident injured no people and no damage to property other than the airplane.

13. Between Hawker's completed work on the airplane and the accident, the airplane logged 225 flight hours and over 200 take offs and landings. During that time, the airplane was based in Texas and operated primarily in Texas.

14. After the accident, the airplane was again moved to the DAR hangar. Rhodes put the airplane on jacks and removed the access plate. He observed that the rear retract arm of the nose gear was fractured. He removed one portion of the fractured arm from the airplane. Before removing the retract arm, he did not photograph or note its position or condition.

15. On August 25, 2007, David Beaver of Beaver Air Services and Equipment inspected the airplane. He took no photographs or video of the condition of the retract arm as he

found it. Rather, he removed the portion of the retract arm that had not been removed by Rhodes, and then he installed a used replacement-retract arm. He then tested the travel of the nose gear with the replacement arm installed. Beaver took notes of his observations, but later he threw them away. Beaver wrote a report of his observations about August 27, 2007.

16. FAA Form 8130 requires mechanics to be able to trace aviation parts he uses. No FAA Form 8130 exists for the replacement retract arm. The part number listed on Beaver's invoice to DAR for the replacement retract arm installed by Beaver on the airplane after the accident is a non-existent part number, vitiating the accuracy of the video reenactment.

17. Beaver described in his report that the number on the rear retract rod was showing one to two threads, the photographs Wilson took after Beaver installed a new arm shows three threads. The other conditions described in Beaver's report of the nose gear retract mechanism when he first observed it are neither "non-standard" nor inconsistent with the manufacturer's manual.

18. As part of the repairs made to the airplane after the accident, Wilson had the landing gear transmission motor overhauled. The dynamic brake relay was also adjusted.

19. The testimonies of Fullard and Hofmann were credible.

20. Fullard and Hofmann were qualified to perform the annual inspection of the airplane and to rig the landing gear of the airplane. Their inspection at Hawker was in accord with the manufacturer's manual. The landing gear was re-rigged by Hawker in accord with the manufacturer's manual.

21. During their inspection of the landing gear, Fullard and Hofmann observed that the rear retract rod of the nose gear was striking the stringer. Fullard and Hofmann re-rigged the landing gear so that the rear retract rod would not hit the stringer. At the time the airplane left Hawker, the landing gear was properly rigged, and the rear retract rod of the nose gear was clear of the stringer.

22. An airplane's landing gear can get out of rig during use for 225 flight hours and over 200 cycles. Forces sufficient to break the nose wheel may also cause the nose gear to get out of rig. In addition, changes in the dynamic brake relay that time the landing gear's motor cut off can cause the gear to get out of rig. Simple wear and tear on the

mechanical components of the gear and loosening of the chains associated with the retract mechanism can also result in the gear getting out of rig.

*Conclusions.*

1. Wilson sues for an accident in Texas on an intra-state flight. Wilson is a Delaware company doing business in Texas. Hawker is from Kansas. Wilson bought the airplane in Georgia seven months before the accident from a Maryland company through a Texas broker for delivery in Texas. Hawker inspected it in Georgia before the sale. The site of the inspection was fortuitous since the inspector and inspected are intrinsically mobile. Texas has the most significant relationship to Wilson's claims. *See Hughes Wood Prods., Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex. 2000).
2. Hawker inspected the landing gear in accord with the manufacturer's manual.
3. Hawker rigged the landing gear in accord with the manufacturer's manual.
4. The rear retract rod of the nose gear was not striking the stringer when the airplane left Hawker.
5. Hawker was not negligent in inspecting or servicing the airplane.
6. No conduct by Hawker caused the retract arm to fracture.
7. There is no evidence that Hawker caused the accident or Wilson's damages.
8. Insurance adjuster, Ken Gedney, did not supply sufficient data to support that Wilson's claim of diminution resulted from Hawker's services.
9. Hawker's airworthiness certification on completion of its annual inspection in 2006 does not warrant that the airplane will have no mechanical failures before its next annual inspection.
10. The Hawker airworthiness certification on completion of a re-rigging of a landing gear does not warrant that the landing gear will not get out of rig before its next annual inspection.
11. Rhodes was negligent in deciding not to put the airplane on jacks and to remove the access plate to conduct a complete and thorough examination of the nose gear retract mechanism after Gowins reported to Rhodes that he had heard a noise at the time that the gear was retracted after takeoff from Llano, Texas.
12. Gowins was negligent in deciding to takeoff from Brazoria County Airport on the accident flight despite the fact that Rhodes had neither identified the reason for the

noise Gowins had heard during the immediately preceding flight nor thoroughly inspected the nose gear to identify the reason for that noise.

13. Factors beyond the control of Hawker caused the accident; no causal connection linked Hawker's services to the accident.

14. Rhodes's negligence and Gowins's negligence caused the accident and Wilson's damages.

15. Wilson failed to preserve, through photographs, video, or otherwise, the condition of the fractured rear retract arm installation as it existed at the time of the accident. Instead, Wilson or Wilson's representatives removed the fractured rear retract arm and installed a replacement retract arm that was not a traceable part. Wilson then photographed and videoed the replacement installation. Wilson spoliated the evidence of the condition of the rear retract arm installation as it existed at the time of the accident. *See Watson v. Brazos Elec. Power Coop., Inc.*, 918 S.W.2d 639, 643 (Tex. App.—Waco 1996, writ denied), cited in *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998).

16. Wilson's photographs of the condition of the replacement retract arm installation are not evidence of the condition of the retract arm installation at the time that the airplane left the control of Hawker.

17. Wilson seeks to pursue recovery in tort from Hawker, on the theory of negligence, for economic damages that relate solely to the subject of Wilson's contract with Hawker to inspect and service the airplane. Wilson's negligence claim is barred by the economic loss doctrine. *See Memorial Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008); *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991).

18. Once Hawker inspected the airplane and Wilson bought it "as is" from El Jefe Aviation, Wilson had waived all defects. Hawker cannot have a greater liability than El Jefe.

19. Wilson may not acquire more rights than for what Hawker and El Jefe had bargained. Wilson may not imply additional rights because it is not a third-party beneficiary of that deal. Even if it were, Hawker did nothing wrong because it fulfilled its promises

to El Jefe under their contract.   *See generally*, E. Allan Farnsworth, Contracts §10.3 (1982).


Signed on December 24, 2008, at Houston, Texas.


                                            Lynn N. Hughes   USDJ
                                      United States District Judge